for New York is not such a district with reference to Barnstable. There are many such districts within the United States, upon our long rivers and extended bays, such as Hudson's river, Delaware river, Penobscot Bay, Chesapeake Bay, &c. I confess, that, after much reflection, I have reluctantly come to the conclusion, that this last is the true sense of the terms; and that in this section the legislature intended, by "more interior district," a district, which, with reference to local and geographical position, and in common usage, is deemed interior to another, that is, further within the indentations or inlets of the contiguous or surrounding country, than that in which the vessel has already arrived, and through which she would or might ordinarily pass, in order to reach such inner district. I have not found the words used in any other section of the act; but in the close of the eighteenth section, the words, "interior port," occur in a sense exactly like that, which I feel constrained to apply to the section under examination.

The requisitions of the act may be hard and rigorous: but if they are so, the remedy lies with congress, and not with courts of law. My judgment is, that the judgment of the district court must be reversed, and a venire facias de novo awarded. Judgment accordingly.

====

## Case No. 14,553.

### UNITED STATES v. BEARNS.

[See Case No. 14,551a.]

====

## Case No. 14,554.

### UNITED STATES v. BEATTIE.

[Gilp. 92.] [1]

District Court, E. D. Pennsylvania, June 10, 1829.

PRINCIPAL AND SURETY—PAYMENT—DISCHARGE—RELINQUISHMENT OF CLAIM—OFFICER.

1. Where one of two sureties in a joint and several bond given to the United States, is sued separately, a discharge of the other surety, by the president under the provisions of the act of 3d March, 1817 [3 Stat. 399], cannot be given in evidence under a plea of payment.

2. The act of 3d March, 1817, merely releases the person of a debtor, but does not affect the debt.

3. The letters and transactions between the officers of the government and a debtor to the United States, relative to his account, may be given in evidence under a plea of payment.

4. Where an officer, receiving a salary from the United States, is surety for a defaulter, the continuance of the payment of his salary is no relinquishment of the claim against him as surety.

5. The settlement and closing of an account of a public officer does not discharge his liability as a surety for another officer, though the default of the latter was previously known.

[Cited in U. S. v. Case, 49 Fed. 271.]

––––––––––

[1] [Reported by Henry D. Gilpin, Esq.]

On the 18th August, 1818, Thomas Burrowes, a purser in the navy, as principal, and Francis S. Beattie and Edward M'Gee as sureties, executed to the United States of America a joint and several bond for twenty-five thousand dollars. The condition was that "Thomas Burrowes should regularly account, when thereunto required, for all public moneys received by him, from time to time, and for all public property committed to his care, with such officers of the government as should be authorised to settle his account, and should pay over any sums found due on such settlement, and should faithfully discharge the trust." By an indorsement on the back of the bond, the secretary of the navy, acting in behalf of the United States, agreed "that the obligors were not to be held responsible for any loss of the said moneys or property, occasioned by capture, sinking, stranding, or any other unavoidable casualty; and, if the purser should be deprived of his books or vouchers by such circumstance, the obligors were to be exonerated, on producing satisfactory evidence of the facts, unless it was shown that the money or public property had been misapplied." In the year 1821, Thomas Burrowes died, and on the 5th October, 1822, the fourth auditor directed the purser at Philadelphia to retain the pay of the defendant, Francis S. Beattie, who was a surgeon's mate, to meet a delinquency in the accounts of the former. This was done accordingly; and the suspension continued until the 30th June, 1823, when the defendant received a letter from the secretary of the navy, informing him that his accounts were closed, and that he was thereafter regularly to receive his pay and rations as a surgeon's mate. By this settlement, a balance appeared to be due to the defendant of two hundred and sixty-six dollars and eighty-seven cents, which was retained by the treasury, to be applied as an offset to the amount for which he was responsible as the surety of Thomas Burrowes. On the 29th November, 1823, a final settlement was made at the treasury of the account of Thomas Burrowes, by which it appeared that, at the time of his death, there was a balance of public money due by him to the United States, amounting to one thousand two hundred and ninety-six dollars and twelve cents. To recover this, separate suits were instituted in the Eastern district of Pennsylvania, on the 19th January, 1824, against each of the sureties, Francis S. Beattie and Edward M'Gee. The summons in the former case was returned "Nil habet;" but judgment was recovered against the latter for the whole amount of the balance due from Thomas Burrowes. On this judgment, execution issued against M'Gee, who was arrested and imprisoned, but, on the 16th August, 1824, the marshal returned that he had been "discharged by order of the president." On the 7th March, 1825, the present suit was brought against